**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARIAH M. HARRIS,**

  **Petitioner,**

 vs.

**UNITED STATES OF AMERICA,**

  **Respondent.**

    Civil Action 2:16-cv-291
    Criminal No. 2:13-cr-0068(2)
    **JUDGE MICHAEL H. WATSON**
    Magistrate Judge King

**REPORT AND RECOMMENDATION**

Petitioner Mariah M. Harris, a federal prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate under 28 U.S.C. § 2255,* (Doc. 86)("*Motion to Vacate*"), Petitioner's *Memorandum of Law in Support of Petitioner's Application and Motion under 28 U.S.C. Section 2255(f)(1)* (Doc. 89)("*Memorandum in Support*"), Petitioner's *Supplement to the Petition under 28 U.S.C. Section 2255* (Doc. 107), Respondent's *Response in Opposition* (Doc. 108), Petitioner's *Reply* (Doc. 111), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (Doc. 86) be **DENIED** and that this action be **DISMISSED.**

**Facts and Procedural History**

On March 21, 2013, Petitioner, along with her brother, was indicted on a charge of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, § 2.[1] *Indictment* (Doc. 1). On September 3, 2013, Petitioner pled guilty to that charge pursuant to a plea agreement. *Plea*

---

[1] Petitioner's brother and co-defendant was also charged with brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii). *Indictment.*

1

*Agreement* (Doc. 37). She was sentenced to a term of imprisonment of 108 months. *Amended Judgment* (Doc. 68). The United States Court of Appeals for the Sixth Circuit affirmed the judgment of this Court. *United States of America v. Harris*, 617 Fed. Appx. 388 (6th Cir. 2015). In doing so, the Court of Appeals summarized the facts of the case as follows:

> Darnell and Mariah Harris are brother and sister, currently 27 and 21 years old, respectively. On May 21, 2012, they robbed a jewelry store. Mariah entered first, posing as a customer, and then covertly called Darnell, apparently to tell him there were only two employees (a male and a female) and no other customers in the store. About 10 minutes later, Darnell entered, wearing a hat and sunglasses, and holding a handgun in the air to announce the robbery. Darnell ordered the employees to the back of the store and duct-taped their hands, ankles, and eyes. While Darnell and Mariah were robbing the store, the male employee worked free from the duct tape. When Darnell heard him, he choked the employee unconscious and beat him with his handgun, causing injuries that required stitches and surgical staples to close the wounds and surgery to repair broken bones and teeth. Both employees eventually required significant psychological counseling.
> While Darnell was beating the male employee with the gun, Mariah was insisting, "you said no one would get hurt," but Darnell continued. Darnell also sprayed adhesive into the male employee's eyes and held the gun to the employee's head with a promise to kill him. Eventually, Darnell bound the employee with an extension cord and more tape, and returned to the robbery.
> Darnell was in the store for about one hour and 15 minutes, though Mariah left after about 45 minutes. After she left, Darnell demanded the employees' names and addresses so he could find them if they called the police. Darnell and Mariah stole $53,734 in jewelry, $3,125 in cash, and the store's video surveillance system. Neither of the employees could offer the police any reason for Darnell's violence or for his prolonging the robbery for over an hour, particularly given that the employees offered no resistance and the male employee had offered Darnell and Mariah whatever they wanted if they would just leave.
> A little over two months later, on August 1, 2012, the male employee was in a Kroger grocery store and spotted Darnell and Mariah. But they also recognized him and immediately abandoned their shopping cart and ran from the store. With this second sighting and the Kroger surveillance video, the employee was able to identify Darnell and Mariah for the police.
> Police arrested Darnell and Mariah. The prosecutor charged both with robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951, and also charged Darnell with brandishing a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & ii). Both entered guilty pleas.
>
> \*\*\*
> After conducting a thorough sentencing hearing, the court sentenced Darnell to 171 months in prison. Mariah's counsel conceded that her guidelines

> range was 108 to 135 months but sought a downward variance based on her youth, lack of criminal history, Darnell's influence, and her expectation that during the robbery no one would be hurt. The court sentenced her to 108 months, the bottom of the advisory range. Neither the defendants nor the government raised any objections following the court's *Bostic* inquiry. *See United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).
>
> \*\*\*
>
> Mariah argues that the district court erred by denying her request for a downward variance from the advisory sentencing range. That request was premised on a variety of facts and circumstances: this was her first conviction, she was young (18 years old at the time of the crime), she was influenced by her older brother (Darnell), she did not anticipate any violence (based on her statements during the crime), and she left the store before the robbery was complete. The court considered all of these factors but declined to grant a variance, instead sentencing her to the bottom of the guideline range. Mariah now argues that the sentence imposed was substantively unreasonable.
>
> We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Gall*, 552 U.S. 38, 51 (2007). Sentences within the guidelines range are presumed reasonable. *United States v. Adkins*, 729 F.3d 559, 564 (6th Cir. 2013).
>
> Here, the district court considered all of the relevant sentencing factors as well as the additional factors that Mariah emphasizes on appeal. Mariah can point to no authority for the proposition that because the court *could* have varied downward on the basis of these factors, the court *should* have done so, or that its refusal to do so resulted in a sentence that is unreasonable. We find no abuse of discretion here.

*Id.* at 389-91.

On April 4, 2016, and acting without the assistance of counsel, Petitioner filed the *Motion to Vacate,* alleging that her trial counsel was ineffective at the pretrial stage, during the plea negotiation process, and at sentencing. In her *Reply*, Petitioner also appears to argue that, because the sentencing range found by the Court was based on enhancements not found by a jury, "Petitioner's enhancements must be revoked and her sentence adjusted downward to reflect the correct sentence range." *Reply* (Doc. 111, PageID# 527).[2] Respondent contends that Petitioner's claims are without merit.

---

[2] The *Motion to Vacate* also includes the claims that Petitioner was denied due process because the government "denied her fair notice and through selective prosecution subjected her to a disparate sentence for a minimal role in

3

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995)(unpublished)). Further, non-constitutional claims not raised at trial or on direct appeal are waived on collateral review except where the errors amount to something akin to a denial of due process. *Grant v. United States*, 72 F.3d 5043, 506 (6th Cir. 1996). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse her failure to raise the claims previously; or (2) that she is "actually innocent" of the crime. *See Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013)(citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

> A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the

---

the offense*," id*. (PageID# 387), and that the search of her cell phone and the use against her of information obtained by that search violated her Fourth Amendment rights. *Motion to Vacate*. However, Petitioner's *Memorandum of Law in Support of Petitioner's Application and Motion under 28 U.S.C. Section 225(f)(1)* (Doc. 89) makes no mention of these claims. Respondent's *Response in Opposition* (Doc. 108) did not address these claims, nor did Petitioner's *Reply* (Doc. 111), The Court therefore concludes that Petitioner has abandoned these claims and does not intend to pursue them as separate claims.

> proceedings. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)(citing *Abrahamson,* 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017).

### Ineffective Assistance of Counsel

Petitioner alleges that her trial counsel was ineffective at the pretrial stage, during the plea negotiation process, and at sentencing. "In all criminal prosecutions," the Sixth Amendment affords "the accused. . .the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). In order to prevail on an ineffective-assistance-of-counsel claim, a petitioner must establish that (1) her counsel's performance fell below an objective standard of reasonableness and (2) her defense was prejudiced by counsel's errors. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to demonstrate "that counsel's representation fell below an objective standard of reasonableness," a petitioner must overcome the strong presumption that her counsel rendered adequate assistance. and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. "The objective standard of reasonableness is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) (citation and internal quotation marks omitted). In order to demonstrate prejudice, the petitioner must

5

demonstrate that there is a reasonable probability that, but for her counsel's errors, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In the context of a plea bargain, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)(citation omitted).

A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). However, a petitioner may challenge the entry of a plea of guilty on the basis that her counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland*'s two part test applies to a challenge to a guilty plea based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. at 59; *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief on this basis, however, a petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

As an initial matter, Petitioner seems to contend that she need not establish prejudice by virtue of her counsel's allegedly deficient performance. *Memorandum in Support* (Doc. 89, PageID# 401). This Court disagrees. It is only where there has been a complete denial of counsel at a critical stage, or "if counsel entirely fails to subject the prosecution's case to meaningful

adversarial testing," or where it is unlikely "that any lawyer, even a fully competent one, could provide effective assistance," that a specific showing of prejudice will not be required. *United States v. Cronic*, 466 U.S. 648, 659-60 (1984). In the case presently before the Court, Petitioner was not denied counsel at a critical stage of the proceedings. Moreover, Petitioner herself refers to her counsel's consultation with her, discussions with the Government, participation at court hearings, and the filing a sentencing memorandum advocating for a downward departure from the advisory sentencing guidelines. Under these circumstances, it cannot be said that Petitioner's counsel utterly failed to engage in the adversarial process. *See Bell v. Cone*, 535 U.S. 685, 697 (2002)(Holding that "the attorney's failure must be complete"). *Cf., e.g., Phillips v. White*, 851 F.3d 567 (6th Cir. 2017)(Prejudice may be presumed where defense counsel offered no defense whatsoever during the penalty phase of capital prosecution). Similarly, it cannot be said that the circumstances in Petitioner's case would have prevented "any lawyer, even a fully competent one," from providing effective assistance. *See Cronic*, 466 U.S. at 560. The Court therefore concludes that the two-pronged standard of *Strickland* applies.[3]

*Pretrial Stage*:

Petitioner alleges that her counsel was ineffective at the pretrial stage:

> Petitioner's defense counsel met with the Petitioner and from the start, knowing of her inexperience with legal procedures and matters, advised that the best strategy was to co-operate against her brother/co-defendant.
>
> To date the Petitioner was not aware of any independent investigation done by defense counsel, nor did [Petitioner] have the opportunity to view any Brady material.
>
> The only information the Petitioner was given was that the Reynoldsburg Police Dept. had noted a phone call she made to the co-defendant in relation to the approximate time of the robbery.

---

[3] The Court also rejects Petitioner's suggested measure of effectiveness by reference to counsel's performance in other cases. See *Memorandum in Support* (Doc. 89, PageID# 404)(Arguing that proof of her counsel's deficiency "[i]s . . . not how long counsel has been practicing law, but how many clients he's won acquittals for." ).

7

> The Petitioner requested that the defense counsel investigate certain details regarding the government's charges, but he would not do so. Additionally counsel refused to meet with her family during a conference, nor did he involve family in the prosecution of their daughter.

*Memorandum in Support* (Doc. 89, PageID# 398). Petitioner specifically alleges that her counsel

> refused to investigate the mistaken circumstances surrounding the Petitioner's procurement of the firearm. The Petitioner's older brother, who [sic] she admired, and looked up to as a role model, and familial person of influence, told the Petitioner that he required the firearm for protection. When that was revealed, in order to mitigate a motive for securing the firearm, he allowed the theory to be advanced by the government, that she obta[i]ned the firearm specifically for the robbery without any concrete facts or the testimony of the gun owner to corroborate the facts, instead of performing a th[o]rough investigation of that fact counsel could not counter the AUSA's theory.

*Id.* (PageID# 403).

At her change of plea proceeding, Petitioner stated, under penalty of perjury, *Transcript of Change of Plea Hearing* (Doc. 76, PageID# 339), that she had told her counsel everything that she knew about the case, that her counsel had fully informed her of all the facts and circumstances underlying the charge, as well as any defenses that she might have to charge, and any discussions that he had had with counsel for the Government. *Id.* (PageID# 340-41). Petitioner was satisfied with her counsel's advice and representation. *Id.* (PageID# 341). Petitioner stated that she had read the terms of the plea agreement, which was signed by her, and had discussed those terms with her counsel. *Id.* (PageID# 345). In summarizing the evidence that the Government would prove should the case proceed to trial, the attorney for the Government stated that, prior to the robbery, Petitioner had asked a family friend to borrow the gun which was used during the robbery, but which she had represented was to be used for protection. *Id.*

(PageID# 353-54).[4] Petitioner expressly agreed, under penalty of perjury, to this summary. *Id*. (PageID# 355).

In light of this record, the advice given to Petitioner by her counsel – *i.e.,* that "the best strategy was to co-operate against her brother/co-defendant," *see Memorandum in Support* (Doc. 89, PageID# 398) – fell well within the realm of reasonable professional advice. Moreover, even Petitioner concedes that her counsel shared at least some discovery with Petitioner, including information regarding her telephone communication with her brother at "the approximate time of the robbery.*" Id*.

Petitioner also complains that her counsel failed to investigate the Government's case against her. The United States Supreme Court has explained defense counsel's duty to investigate:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.

---

[4]"Mariah, before the robbery, asked for a gun. The friend allowed her to use the gun, which Mariah described was to be used for her protection. The friend, who said that the gun was a real semi-automatic pistol, said that Mariah kept the gun for several weeks. When she returned the gun to the friend, the condition of the gun was rusty. Mariah told her friend that she attempted to clean the gun." *Transcript of Change of Plea Hearing* (Doc. 76, PageID# 354).

9

*Strickland*, 466 U.S. at 690-91. Petitioner herself stated that she had discussed her case fully with her counsel. Significantly, she does not identify any witnesses, nor does she specify any facts or details of the case, that her counsel should have investigated but refused to do so. Moreover, it is not at all apparent that her defense could have been advanced by a meeting between her counsel and her family. Finally, Petitioner has pointed to no prejudice suffered by her or her defense by virtue of her counsel's representation or failure to further investigate the case. Under these circumstances, it cannot be said that Petitioner was denied the effective assistance of counsel by virtue of her counsel's alleged failure to investigate the case at the pretrial stage.

*Plea Bargaining Stage*

In a somewhat related vein, Petitioner also alleges that her trial counsel was ineffective during the plea bargaining portion of the case and failed to negotiate an effective plea agreement because he had failed to independently investigate the case. *Memorandum in Support* (Doc. 89, PageID# 405-06). Petitioner acknowledges that the "Government made it[s] offer in a 'take-it-or-leave-it' manner," but complains that her counsel could not negotiate effectively "because counsel did not subject the prosecutor's case to meaningful adversarial testing. . . ." *Id*.

> In the Petitioner's instant case the defense counsel had nothing to offer the government. He had nothing because he did not check out witnesses for the defense; he had nothing because he did not research the Petitioner's true motives; he had nothing because he did not study the transient nature of youth, as was the Petitioner's case; he had nothing because he did not look into how familial influences affect siblings and parents. . . ."

*Id.*

The United States Supreme Court has recognized that plea bargains have "become so central to the administration of [the] criminal justice system" that a defendant is entitled to the constitutionally effective assistance of counsel at that stage. *Missouri v. Frye*, 566 U.S. 133, 143 (2012)(Defense counsel has a duty to communicate formal offers from the prosecution); *Lafler v.*

10

*Cooper*, 566 U.S. 156 (2012)(Defendant was entitled to relief when he rejected a plea offer based on counsel's incorrect advice concerning the federal sentencing guidelines). However, Petitioner herself characterizes the Government's offer as a "take-it-or-leave-it" offer. *Memorandum in Support* (Doc. 89, PageID# 405-06). Her claim of ineffective assistance at this stage is grounded entirely on her allegation that her counsel failed to investigate the case, a claim that the Court rejects for the reasons stated *supra*. Considering the strength of the Government's case against Petitioner, Petitioner's contention that her counsel could have and should have secured a plea bargain that contained more favorable terms is based on nothing but Petitioner's rank speculation.

Petitioner also alleges that her counsel advised her to lie about her drug and alcohol abuse: "Defense counsel told her that this lie would help her explain to the court about why a teenager as 'pretty as her' would be driven to such a crime." *Memorandum in Support* (Doc. 89, PageID# 404). However, Petitioner, who was 19 at the time she pleaded guilty, *Transcript of Change of Plea Hearing* (Doc. 76, PageID# 339), also testified under penalty of perjury at the change of plea proceeding that she had been treated for an addiction to marijuana. *Id*. (PageID# 339). She reported to the Probation Office (as did her parents) that she had engaged in underage drinking on a weekly basis. *Presentence Report*, p. 12. She also reported that she had used marijuana, sometimes daily, for several years prior to her arrest, and had used Percocet without a valid prescription since age 17. *Id*. On this record, Petitioner's allegation that her counsel advised her to "lie" about drug and alcohol abuse is simply unworthy of credit.

*Sentencing Stage*

Petitioner also claims that her counsel was constitutionally ineffective at the sentencing stage. Petitioner first complains that her counsel failed to object to enhancements that were

11

contained in the *Presentence Report* but which were not charged in the *Indictment* as elements of the offense. *Memorandum in Support* (Doc. 89, PageID# 408). Relying on *Alleyne v. United States*, — U.S. —, 133 S.Ct. 2151 (2013), Petitioner contends that her sentence should not have been enhanced "as if she actually committed the acts." *Id.*

It is important to note that the *Indictment* charged Petitioner with robbery in violation of not only the Hobbs Act but also as an aider and abettor under 18 U.S.C. § 2. *Indictment* (Doc. 1, PageID# 1-2). That statute provides that any person who "aids" or "abets" a crime "is punishable as a principal." *Id*. "'Aiding and abetting . . . makes a defendant a principal when [s]he consciously shares in any criminal act whether or not there is a conspiracy. . . . Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts which one assists another in performing.'" *United States v. Moore*, 460 F.2d 1265 (6th Cir. 1972)(quoting *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949)).

Moreover, *Alleyne* is simply inapplicable to this case. In *Alleyne,* the United States Supreme Court held that any fact that increases a mandatory minimum sentence for a crime is an element of the crime that must be found by a jury beyond a reasonable doubt during trial, and not merely a sentencing factor found by the sentencing judge by a preponderance of the evidence. Petitioner chose not to subject her case to trial by a jury, and her plea to the charge under 18 U.S.C. §§ 1951 and 2 provided a proper basis for her conviction as a principal actor in the robbery.

The *Presentence Report*, which the sentencing Judge adopted without change, *Statement of Reasons* (Doc. 61, PageID# 187)(filed under seal), calculated Petitioner's sentencing guideline range of 108 to 135 months' imprisonment after increasing the base offense level to account for the facts that a firearm had been used during the robbery, that a victim had sustained serious

bodily injury, that victims had been physically restrained, and that the loss had exceeded $50,000. *Id.*, pp. 10-11. *See also Transcript of Sentencing Hearing* (Doc. 73, PageID# 237-48). Petitioner's counsel did not object to the *Presentence Report, id.* (PageID# 247), or to the Court's calculation of the offense level, *Transcript of Sentencing Hearing* (Doc. 73, PageID# 248-49). Petitioner offers no basis for her contention that these enhancements were not appropriately assessed.

Although Petitioner's counsel did not object to the enhancements, he did argue vigorously for a sentence below the guideline range in light of the sentencing factors set out in 18 U.S.C. § 3553(a). *See Defendant Mariah M. Harris's Sentencing Memorandum* (Doc. 52). He noted Petitioner's youth, her lack of criminal history, her expectation that no one would be hurt during the robbery, and the "coercive nature" of her brother's influence. *Id.* (PageID# 138). Notwithstanding her counsel's arguments, the trial judge imposed a sentence within the guidelines. As the United States Court of Appeals for the Sixth Circuit commented, "Mariah can point to no authority for the proposition that because the court *could* have varied downward on the basis of these factors, the court *should* have done so, or that its refusal to do so resulted in a sentence that is unreasonable." *United States of America v. Harris*, 617 Fed. Appx. at 391 (emphasis in the original). The fact that the sentencing judge did not impose a sentence that fell below the guideline range, as urged by Petitioner's counsel, does not mean that her counsel was ineffective in this regard.

Petitioner also contends that her sentence was unreasonable when compared to that of her brother and co-defendant. As noted *supra*, Petitioner's sentencing guideline was 108 to 135 months. *Presentence Report*, p. 11; *Statement of Reasons* (Doc. 61; PageID# 187)(filed under seal). Petitioner's sentence of 108 months fell at the bottom of the guideline range. Her brother

and co-defendant, who had been convicted on not only the Hobbs Act charge but also on a firearm charge, was sentenced to 171 months in prison – a sentence that fell at the top of his guideline range. The United States Court of Appeals for the Sixth Circuit held that Petitioner's sentence was not unreasonable, *United States of America v. Harris*, 617 Fed. Appx. at 391, and this Court will not revisit that issue in these proceedings.

*Petitioner's Post-Incarceration Record*

In her *Supplement to the Petition under 28 U.S.C. Section 2255* (Doc. 107), Petitioner also appears to seek a sentence reduction based on her prison record. Although Petitioner's record while in prison may be commendable, this Court lacks the authority to grant the relief sought by her. When a defendant is eligible for a sentence reduction, *see, e.g.*, 18 U.S.C. § 3582(c)(2), a court "may consider post-sentencing conduct of the defendant . . . in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction." U.S.S.G. § 1B1.10, cmt. 1(B)(iii) (2016). *See also Pepper v. United States*, 562 U.S. 476, 481 ( 2011)( "[W]hen a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation . . . ."). Otherwise, "[a] federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582(c)).

It is therefore **RECOMMENDED** that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

      *s/ Norah McCann King*
      Norah McCann King
      United States Magistrate Judge

May 9, 2017